WILLIAM PIKE *versus* THOMAS G. GALVIN.

[This is one of the Washington county cases, and was published, vol. 29, page 183.  The dissenting opinion of JUDGE WELLS, was then mislaid. The profession will, no doubt, take pleasure in its present publication.]

WELLS, J. — Theodore Jellison, on the 26th of October, 1820, entered into a contract with the agent of Artemas Ward, for the purchase of the demanded premises.   July 7, 1823, this contract was assigned by Jellison to the demandant, for a consideration, expressed in the assignment, of one hundred and fifty dollars.   And on the same day, Jellison by his deed released and quitclaimed to the demandant for a consideration of the same amount, as mentioned in the assignment, the demanded premises.   The habendum in the deed was in the usual form, but contained the following covenant. " So that neither I, the said Jellison, nor my heirs or any other person or persons, claiming from or under me or them, or in the name, right or stead of me or them, shall or will by any way or means, have, claim or demand any right or title to the aforesaid premises, or their appurtenances, or to any part or parcel thereof forever."   Jellison was in possession of the premises, when the deed was made.

The conditions of the contract do not appear to have been performed, and Ward, on the 27th of October, 1825, conveyed the premises to Jones Dyer, who on the 11th of July, 1829, conveyed the same to said Jellison.   Jellison subsequently conveyed them to Stephen Emerson, under the grantees of whom, by several mesne conveyances, the tenant holds.

The demandant contends, that when Dyer made the con-

veyance to Jellison, the title to the premises enured to him, by virtue of the covenant in Jellison's deed to him. And if this position is correct, the demandant is entitled to recover.

If that covenant could be construed as meaning that, the grantor had done nothing to encumber the premises, then an after acquired title would not be affected by it. But the language is too broad, to entitle it to a construction so limited. It is not confined to the past; it does not barely say, I have done nothing to impair or encumber the title, but it extends to the future; the grantor says, that neither he nor his heirs *shall or will* claim any right or title to the premises forever. The terms used so clearly and positively indicate the future, that they cannot properly receive any other interpretation.

The tenant and those under whom he claims are privy in estate with Jellison, whose deed to the demandant having been recorded, they took their deeds, in presumption of law, with a full knowledge of the covenant contained in Jellison's deed to the demandant. The case then is to be viewed in the same manner as if Jellison himself were the tenant, and those, claiming under him, can stand in no better position, than he would occupy.

And what could he say, if he were called upon in this action, to surrender the premises to the demandant? He certainly could not hold them against his express covenant; an estoppel would arise, for one is not allowed in law to claim a thing, where he has covenanted he would not; and when he has declared, that he will not claim any right or title to the premises forever, he cannot do so in opposition to his deed.

If, instead of claiming the land, the demandant had brought an action for breach of covenant against Jellison, after he had acquired a title and conveyed to another, could it not have been maintained? Such a result must have followed, unless the passing of the fee to the demandant, by the estoppel, would have prevented it. If the language contained in Jellison's deed does not create a covenant, which would be broken by a subsequent acquisition and withholding of the

premises, it is difficult to conceive what language would have that effect. And here lies the foundation of the estoppel, to avoid circuity of action. Instead of putting the grantee to an action to recover damages, which might not furnish an adequate remedy, the law allows the title to pass by a silent but effectual operation to him. If it were not so, and the demandant had entered into possession when Jellison gave the deed to him, then upon the subsequent acquisition of the title by Jellison, he could have maintained a writ of entry against the demandant, and recovered the premises, and the demandant would have been put to his action for covenant broken. But the estoppel avoids this circuity, and transfers directly the title to the person to whom by the covenant it belongs.

No one doubts where there is a general warranty, that such is the effect of the estoppel, when the warrantor is seized, but of a defeasible estate, the perfect title to which, he acquires subsequently to the warranty. He covenants to warrant and defend, and upon that the estoppel arises. He is not permitted to act in opposition to it, and to claim the estate against the covenant, and his deed, after the acquisition, confers no greater right than he possessed. The instant he acquires the title, it passes to the warrantee. Is not Jellison's covenant, in this respect, equally potent and binding? He says he will not claim the estate, and to do so, is an act more palpably in violation of it, than if he had said he would warrant and defend it. Not that the covenant in Jellison's deed is as broad and comprehensive, as that of a general warranty, for he does not make himself liable for any defect of title, not arising from his own act ; but he does covenant that he will not claim the premises. For the acts of third persons, who do not derive their authority from him, he is in no wise responsible. The covenant is therefore a restricted one, but so far as it is positive and affirmative, it is obligatory, and the covenantor, by the principles of the common law, is not permitted to deny or disregard it. It is true, that in a common warranty deed, containing a covenant of seizin, and the

grantor not being seized, and damages having been recovered for the breach of the covenant of seizin, no other claim can be made upon the other covenants. But if a deed contains no other covenant, than that to warrant and defend the premises, against the lawful claims of all persons, and the grantor had no seizin and no title at the time of making the deed, but should subsequently acquire a title, would it not enure to his grantee, so that he would be estopped to claim the premises? If so, the objection, that the covenant did not run with the land, on account of the disseizin, would be unavailing.

Although Jellison was in possession, when he conveyed to the demandant, yet he was probably holding in submission to Ward, and it does not appear that the demandant ever entered, or that he took an actual seizin by virtue of his deed, or a constructive one, unless the deed of Jellison operated as such, by a disseizin of Ward. But it is unnecessary to consider this point, for it is not apparent how Jellison or those claiming under him can interpose the objection of a want of seizin in him, or that the covenant did not run with the land; he has said that he will not claim the land, and must be bound by his declaration, and the tenant can stand in no better situation, holding under him.

But the question of estoppel, involved in this case, is not now an open one.

In *Fairbanks & al.* v. *Williamson*, 7 Greenl. 96, a covenant, similar to that contained in Jellison's deed, was held to operate as an estoppel, and that a title, subsequently acquired, would enure to a prior grantee. And although the grantor was not seized and had no legal title, at the time of the conveyance, yet it was decided, that such covenant, though not technically a warranty, is a covenant real, which runs with the land, and estops the grantor and those claiming under him. The same principle was adopted in *White* v. *Erskine*, 1 Fairf. 306. The case of *Kimball* v. *Blaisdell*, 5 N. H. 533, is a direct authority in support of the same doctrine. In *Trull* v. *Eastman*, 3 Metc. 121, the demandant, an heir apparent, released the interest which he had or might have in the real

estate of his father, and his deed contained a covenant precisely like that in the deed of Jellison. Upon the death of his father, it was decided, that the estate enured to the grantee and that the demandant was barred by his covenant, from claiming the estate, and the case of *Fairbanks & al.* v. *Williamson,* was cited as an authority, in support of that decision.

The deed being a release only, does not alter the result, but it is the covenant which effects it. For although a release only bars the right, which the releasor has, yet the warranty will rebut and bar the heir and his heirs of a future right, which was not in him at that time. Co. Lit. 265, a. And the reason given, by Lord Coke, for the rule is, to avoid circuity of action, for if he, who made the warranty, should recover the land against the ter-tenant, the latter, by force of the warranty, would have as much in value against the same person. And the estoppel arises although the grantor had neither title nor possession at the time of making the release, in the case put in Co. Lit. The substance of the rule, extracted from the cases, is, that one shall not recover against his own covenant. Not the form of the words, but the meaning is to be regarded, and though the covenant in Jellison's deed is not co-extensive with one of general warranty, yet it is express, that neither he, nor his heirs, nor any person claiming under him or them, shall forever claim the premises. Therefore when the title came to him, by conveyance from Dyer, he was rebutted and barred from claiming it, and it passed directly from him to the demandant. Nothing was then remaining in him to convey to Emerson.

It may be that grantors do not always examine carefully the covenants, which they make, and sometimes they contain a broader meaning than was intended. But the remedy consists in a more circumspect, and vigilant attention to them. The law imparts a liberty to parties to make such covenants, as their rights require, but when made, it enjoins the performance of them, according to the obvious import of the language in which they are clothed.

In the case of *Allen* v. *Sayward*, 5 Greenl. 227, the defendant and a co-executor had conveyed to the plaintiff certain real estate, as executors under the will of the testator. They covenanted that they had good 'right and lawful authority under the will, as executors, to sell and convey the premises. The Court doubted whether any thing more was intended than that they were duly qualified as executors, and that they derived from the will sufficient authority to sell the real estate of their testator. But taking the covenant in its utmost latitude, it was construed to mean that the testator died seized, and that it was not necessarily inconsistent with an after acquired title by the defendant. The testator might have been seized and the grantor have entered and taken the seizin. The covenant then was not broken, but was performed ; a subsequent eviction by an older and better title, which afterwards came to the defendant, would create no estoppel, for there was no covenant in opposition to what was done by the defendant.

The case of *Ham* v. *Ham*, 14 Maine, 351, was an action of dower. The tenant had taken a deed from the husband of the demandant, with no other covenant, than one like that in Jellison's deed, but he exhibited a good title derived from another source.

The whole question turned upon the seizin of the husband, and the evidence shows that he was not seized in fact, and the demandant could not recover, unless the tenant was estopped by the deed of the husband to him, to deny his seizin. There was no covenant of seizin, nor any declaration in the deed, that the husband was seized, or that he had any title, and for that reason it was decided, that the tenant by taking the deed did not admit the seizin, because no such fact was affirmed in the deed.

These cases do not appear to conflict in any manner, with that of *Fairbanks & al.* v. *Williamson*. In *Comstock* v. *Smith*, 13 Pick. 117, the tenant conveyed to the demandant all his right, title, &c. with a covenant to warrant and defend against all persons claiming under him, and subsequently ac-

quired the title from a third person, he having possession, but no title, at the time of his conveyance. The Court construed the tenant's deed as conveying his then existing interest, and that the covenant could only operate on that and refer to existing claims and incumbrances, and that the tenant would not be estopped to set up a title subsequently acquired.

It will be seen, that the covenant in that case is very materially different from the one in Jellison's deed. It is much more limited, and may be fairly interpreted as a warranty only against claims and incumbrances created by the grantor, and then existing.

That such difference exists, is apparent from the case of *Trull* v. *Eastman*, for there a covenant, such as Jellison made, was decided to create an estoppel in relation to an after acquired title.

But if, by the cases of *Comstock* v. *Smith* and *Trull* v. *Eastman*, a distinction is intended to be drawn, between a release of one's *right, title and interest* and a release of the *land*, and that the covenants are to be enlarged or restricted accordingly, they would still be in harmony with *Fairbanks & al.* v. *Williamson*, and with the right of the demandant, in the present case, to recover, for in both instances, there was a release of the *land*, and not the mere right, &c., and the premises themselves were conveyed for a valuable consideration. No such distinction, as that adverted to, is necessary to sustain those cases, for the covenants mentioned in them are so widely different, as justly to produce different results.

In *Blanchard* v. *Brooks*, 12 Pick. 47, one of the questions raised related to the *quantum* of the estate conveyed by Soley to Gassner, whether a vested interest alone, or a contingent one, to which the grantor was entitled. It was held the conveyance did not embrace the contingent interest, and that the grantor, with general warranty, was not estopped to claim it after the happening of the contingency, and that the warranty was only co-extensive with the grant.

Jellison releases the premises, describing them by metes and

bounds. The *quantum* of the estate is free from any question, and his covenant applies to it, and is co-extensive with it.

But if the rule, laid down in *Fairbanks & al.* v. *Williamson,* were clearly incorrect, in my judgment it would be unwise to change it without the action of the Legislature. It has now remained for nineteen years, many decisions have been made in conformity to it, and many titles have been acquired under it. The overruling it will not only be introducing a new rule, in relation to future conveyancing, but produce a retrospective action, upon deeds already made. A judicial decision by the power of construction, looks to the past as well as to the future, and embraces all cases that are in existence, or that may arise hereafter.

The stability of legal decisions affords a security which ought not to be impaired, unless upon the most pressing necessity.

It is my opinion the demandant is entitled to recover.